IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**CAROLYN WASHINGTON,**

      **Plaintiff,**

**vs.**                                    **CASE NO. 4:04cv209-RH/WCS**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      **Defendant.**

_____/


<u>**REPORT AND RECOMMENDATION**</u>

      This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**I.**      **Procedural status of the case**

      Plaintiff, Carolyn Washington, applied for disability insurance benefits and supplemental security income benefits.  Plaintiff proceeds *pro se*.  Plaintiff was 37 years old at the time of the administrative hearing, has an education to the eighth or ninth grade, R. 259, and has past relevant work as a produce packer, cashier and checker, horticultural worker, order picker, and presser.  R. 13.  Plaintiff alleges disability due to

pain in the upper shoulder, neck, and lower back with muscle spasm, and a fractured

tail bone as a result of a motor vehicle accident on June 17, 2000.  R. 14.  The

Administrative Law Judge found that Plaintiff has the residual functional capacity to do a

full range of light work, can still do her past relevant work as a cashier or checker, and

as a presser, R. 18, as well as other jobs, R. 19, and is not disabled as defined by

Social Security law.

## II.   Legal standards guiding judicial review

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.  Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a

scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208,

1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported

by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If

the Commissioner's decision is supported by substantial evidence we must affirm, even

if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8

(11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the

Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do his previous work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  <u>Barnhart v. Walton</u>, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.   Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

III.   **Analysis**

Plaintiff had an automobile accident in 2000 and has not worked since then.  R. 267.  After that accident, Plaintiff's back began to hurt.  R. 270.  Plaintiff said that after several tests, it was discovered that her tail bone was broken, though the reports were in conflict.  R. 271.  Plaintiff testified that she had seen many physicians without any relief.  R. 271-273.  She said that she felt like she was trapped in an 80-year old body. R. 273.   She said none of the treatments (physical rehabilitation, chiropractic manipulation, pain medication) had helped.  R. 275.  She denied having had any psychiatric hospital treatment and said that none of her doctors had ever suggested psychiatric care.  R. 277-278.  She said that she had been told that surgery would not help.  R. 279.

Plaintiff testified that she enjoyed working, and wished that she could work again. R. 285.  She felt that she had a good job working in the flower nursery.  *Id*.

Plaintiff testified that she cannot get out of bed, does not get any sleep, and is always in pain.  R. 274.  She said that she could not clean her house or take a good bath.  R. 280.  Her daughter does the cooking and housework.  R. 289.  She said she spends most of her time in bed and watches television.  R. 289.

Plaintiff said she thought she could sit or stand for 20 to 30 minutes and then would have to lie down.  R. 289-290.   She said she could not walk very well, though she had tried to walk for therapy.  R. 281.  She testified that she could not walk a block. R. 290.

Pain which is reasonably attributed to a medically determinable impairment is relevant evidence for determining residual functional capacity.  Social Security Ruling

96-8p, p. 4.  Pain may affect either exertional or non-exertional capacity, or both.  *Id.*, p.

6.

> In order to establish a disability based on testimony of pain and other symptoms,
> the claimant must satisfy two parts of a three-part test showing:  (1) evidence of
> an underlying medical condition; and (2) either (a) objective medical evidence
> confirming the severity of the alleged pain; or (b) that the objectively determined
> medical condition can reasonably be expected to give rise to the claimed pain.
> *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits
> subjective testimony, he must articulate explicit and adequate reasons for doing
> so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to
> articulate the reasons for discrediting subjective testimony requires, as a matter
> of law, that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d
> 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for

disregarding the claimant's subjective pain testimony must be based upon substantial

evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532

(11th Cir. 1991).

The Administrative Law Judge determined that Plaintiff's complaints of

debilitating pain are not supported by the objective testing and the opinions of at least

four specialists.  R. 18.  He found that the "evidence consistently demonstrates that the

claimant has several mild to moderate symptoms, none of which, either singly or

collectively, is of a level of severity to completely preclude the claimant from all work

activity."  R. 17.

In support of these findings, the ALJ noted that nerve conduction tests had not

shown any evidence of radiculopthy or peripheral neuropathy.  R. 17.  This finding is

supported by substantial evidence in the record.  It was noted on September 15, 2000,

that an EMG found "no evidence of cervical or lumbar radiculopathies, or peripheral

entrapment syndrome."  R. 160.  An x-ray reveals a possible old fracture of the sacrum

and coccyx.  *Id.*

A second basis for the ALJ's rejection of Plaintiff's testimony was that a bone

scan had shown no recent fracture of the coccyx.  R. 17.  A nuclear medicine bone scan

on November 2, 2000, revealed "no fractures of the coccyx."  R. 155.

The ALJ also noted that a rheumatology examination in February, 2001, was

"largely negative with no explanation for subjective complaints of severe pain."  R. 17.

This finding is also supported by substantial evidence in the record.  On April 6, 2001,

Dr. John M. Szczesny reviewed the objective testing, finding that while Plaintiff was

shown to have degenerative osteoarthritis in the hips and sacroiliac joints by CAT scan,

and mild diffuse annular bulges of the lumbar spine by MRI, there was "nothing

significant enough to explain her symptoms."  R. 177.  On February 21, 2001, Dr.

Szczesny made the following comments in a letter to Aaron Stein, M.D.:

> As you know, her MRI scan basically showed mild annular bulging in the
> lumbar spine at L3-4, L4-5 and L5-S1.  There is no abnormality of the
> thecal sack or the cauda equina.  The bone heights are well maintained
> and the paravertebral structures are normal.  She was noted to have no
> abnormality suggestive of a neurforaminal or central spinal canal stenosis.
> Further x-rays and CT scans did show degenerative arthritic changes on
> her back and hips and sacroiliac joints. . . .  In addition to complaints of
> pain, she has feelings of numbness and tingling in both feet.  She has pain
> down the back of both legs, and also down the front of the legs.  Actually,
> she has trouble characterizing the pain pattern consistently.
>
> *                *                *
>
> I have reviewed the x-ray reports of her lower back, pelvis and sacral area
> and in keeping with the findings of her physical exam, I am really unable to
> determine a physical cause to the patient's pain at this time.  I have
> serious doubts that the epidural steroids would be at all helpful to her, and
> at this point I am unsure as to why she is on steroids for her lower back
> pain. . . .

R. 180.

Finally, the ALJ supported his finding that Plaintiff's pain testimony was not credible to the degree alleged with the following subsidiary findings:

> Clinical psychological assessment found no meaningful mental disorder (Exhibit 11F).  Dr. Stein refused to perform several tests recommended by Dr. Cuffe given the mainly negative test results (Exhibit 13F/4).  Dr. Cuffe also could not offer any explanation for the claimant's complaints of severe back pain (Exhibit 14F).  The claimant has been evaluated by several doctors including Drs. Martin, Szczesny, Stein and Cuffe and they have all found no reason for the claimant's subjective complaints.

R. 17-18.

These findings are supported by substantial evidence in the record.  Plaintiff was examined on a consultative basis by John K. McKay, Ph.D. on October 15, 2001.  R. 211.  Although the psychologist noted "many pain behaviors," R. 212, he found "no overt mental impairment or personality disorder."  *Id.*  He found Plaintiff to be mildly anxious and "somewhat high strung."  *Id.*  He concluded that Plaintiff did not have "any disabling mental condition."  R. 213.  At most, he found she might have adjustment disorder with mixed anxiety and depressed mood, "relatively mild and definitely reactive to her health and other circumstances."  *Id.*

The other findings are also supported by substantial evidence.  On July 29, 2002, Dr. Mark J. Cuffe referred Plaintiff to Dr. Szczesny for referral to Dr. Stein "for evaluation of placement of either a dorsal column stimulator or of a morphine pump for long-term management of her chronic pain."  R. 244.  He noted, however, that he was "still unsure as to the exact etiology of her back and coccygeal pain."  *Id.*  This is the same finding as made by Dr. Szczesny.  He also noted that "all of her studies have been basically negative," and he did not recommend neurosurgical intervention.  R. 247.

On September 5, 2002, it was noted that "Dr. Stein reviewed her chart and does not agree" to the procedures recommended by Dr. Cuffe, "given her MRI reports and complaints at this time."  R. 241.

In addition to these findings, the ALJ noted that shortly after the automobile accident, Plaintiff had MRI and CT scans indicating only mild spinal problems.  R. 15. The x-rays on the day of the accident revealed no fracture or subluxation of the cervical spine, and nothing wrong with Plaintiff's thoracic upper lumbar spine.  R. 131, 133.  An MRI on July 31, 2000, found no evidence of focal disc herniation, only mild diffuse annular bulges at L3-4 and L4-5, a small central bulge at L5-S1, and no significant neural foraminal or central spinal canal stenosis.  R. 134.  A CT scan on December 18, 2000, of Plaintiff's sacrum and coccyx found degenerative changes on both sides of the sacroiliac joints, but the sacrum and coccyx themselves were "within normal limits," and mild degenerative changes in the hips bilaterally.  R. 137.  There was "no evidence of fracture or intrinsic bony lesion of the sacrum."  *Id.*

The ALJ also accurately noted the findings of Dr. True Martin.  R. 15.   Dr. Martin noted that a bone scan was negative for acute fracture of the coccyx.  R. 153-155.  He also noted no evidence of "cervical or lumbar radiculopathies, or peripheral entrapment syndrome" by EMG, as noted above.  R. 160.  Dr. Martin did express the opinion that Plaintiff could not stand more than 2 hours in an 8 hour day, and should use a cane for walking, but did not state that Plaintiff could not sit for more than 6 hours in an 8 hour day, though that option was provided on the form.  R. 151.

In summary, the decision to disbelieve Plaintiff's pain testimony was supported by substantial evidence in the record discussed above.  That evidence supported the

ALJ's conclusion that the existing objective medical evidence neither confirmed the severity of the alleged pain, or showed an objectively determined medical condition that reasonably could be expected to give rise to the claimed pain.

Plaintiff testified that her past relevant work as a presser required that she stand much of the day, but she said that she did not need to lift and carry anything weighing more than 10 pounds.  R. 264.  She said that her work as a cashier was a standing job requiring that she lift no more than 20 pounds.  R. 266.  Both jobs, therefore, require no more than the ability to do light work.[1]  The Commissioner's rules define "light work" in part:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

At the administrative hearing, the vocational expert testified that even if Plaintiff were limited to sedentary work, though she could no longer do her past relevant work, there still would be jobs in the national economy that she could do.  R. 296-297.  He said that even if Plaintiff needed a cane while walking, there were still jobs that Plaintiff could perform.  R. 297-298.  Thus, even if this court were to find error at step 4 in the

---

[1] At the administrative hearing, a vocational expert testified that the presser job required light exertion.  R. 296.

finding that Plaintiff can do some of her past relevant work, a remand would not be warranted as the record supports a finding at step 5 that Plaintiff can do sedentary work with the assistance of a cane.

Plaintiff has also submitted additional medical evidence as an attachment to her memorandum.  This evidence was not submitted in the administrative proceedings.

New evidence not submitted at any level before the Commissioner, and submitted for the first time as an appendix to a Plaintiff's memorandum, is not properly a part of the record before this court.  Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999).  Further, if the evidence came into being after the Administrative Law Judge's decision, it is irrelevant as the issue before this court is disability occurring before that decision.  179 F.3d at 1279.

The Administrative Law Judge here rendered his decision on February 5, 2004. R. 20.  Some of the medical records (notes on March 23, 2004, and February 23, 2004, from Jeffrey Wasserman, D.O. and a mental health evaluation by Lawrence V. Annis, Ph.D., dated August 25, 2004) cannot be considered to be relevant.

Other portions of the new evidence came into existence before the ALJ's decision.  Plaintiff argues that she has good cause for failing to submit this evidence to the ALJ because it was the fault of her "prior counsel."  Doc. 19, p. 2.  Plaintiff must demonstrate good cause to this court for having failed to submit the evidence to the ALJ in order to warrant a remand.  Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. denied, 325 U.S. 1124 (1999).  Good cause exists if the evidence did not exist at the time of the hearing.  Caulder v. Bowen, 791 F.2d 872, 878 (11th Cir.1986).  That is not the case here.  Good cause probably does not exist if the claimant procrastinated in

obtaining the evidence.  791 F.2d at 879.  That a claimant was not represented at the

hearing is not, standing alone, good cause.  <u>Allen v. Secretary of Health and Human</u>

<u>Services</u>, 726 F.2d 1470, 1473 (9th Cir. 1984).  Further, a mistake made by a claimant's

attorney is not good cause.  *See also* <u>Sanchez v. Secretary of Health & Human Servs.</u>,

812 F.2d 509, 512 (9th Cir.1987) (applicant lacked good cause where his attorney knew

of his memory loss but did not obtain two psychological examinations until after the

hearing).  Thus, remand to the Commissioner to consider this new evidence is not

justified.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to

deny Plaintiff's application for benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 8, 2005.


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**